Filed 3/28/23  In re A.W. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.W. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E079708 |
| Plaintiff and Respondent, | (Super. Ct. Nos. J289045-46) |
| v. | OPINION |
| R.W., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

R.W. (Mother) and J.W. (Father) are the parents of 14-year-old R.W., born in February 2008, and 13-year-old A.W., born in December 2009. Mother appeals from the juvenile court's jurisdictional findings as to her only.[1] She contends there was insufficient evidence to support the court's findings sustaining the petition against her under Welfare and Institutions Code[2] section 300, subdivisions (b) and (c). We find Mother's jurisdictional arguments are not justiciable, and even if we exercise our discretion to review Mother's moot appeal, substantial evidence supports the jurisdictional findings against Mother.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the San Bernardino County Children and Family Services (CFS) on February 23, 2021, after it was reported that Mother and Father often left the children alone in motel rooms, including overnight, and the children would call their grandparents to tell them that they were alone and hungry. It was also reported that the family was transient, living out of their car and motels, and that the parents were using methamphetamine. It was further reported that the family had past CFS contact and that the parents and the maternal grandmother (MGM) were "'really good at hiding

---

[1] Father is not a party to this appeal.

[2] All future statutory references are to the Welfare and Institutions Code.

2

the children.'" On February 17, 2021, the parents left the children with MGM and the maternal great grandfather. While at MGM's home, R.W. grabbed a kitchen knife and threatened suicide.

On February 25, 2021, a second referral was received indicating the children had been left with MGM for a year and had failed to provide provisions for the children. In addition, MGM had been arrested on February 24, 2021 and charged with vehicular manslaughter. She was found to be under the influence of methamphetamines and marijuana at the time of her arrest. The parents' whereabouts were unknown.

On March 15, 2021, the social worker made contact with a maternal cousin who indicated that the parents had not returned to the home in approximately three weeks and the children remained in MGM's home with the cousin and the maternal great grandfather. On March 22, 2021, the social worker interviewed R.W. who indicated that it had been about four weeks since he had seen Mother or Father. R.W. stated that the parents used a "white powder" and smoked cigars and that he and A.W. have been left alone in hotel rooms overnight. R.W. reported at times feeling depressed, but denied any suicidal ideations. A.W. confirmed R.W.'s statements, noting she had not seen her parents in a month. She added that Mother had anger issues and would yell, scream, hit, and slap her. A.W. also reported domestic violence between the parents and indicated that she knew her parents used drugs, but had not personally seen them do so.

On April 21, 2021, a maternal aunt reported that the maternal grandfather (MGF) was in the process of seeking legal guardianship over the children but the guardianship

had not been finalized. The maternal aunt also stated that Mother and Father had shown up at MGF's home, where a verbal altercation took place, and against MGF's wishes, the parents left the home with the children. The family did not know the parents' whereabouts and were unable to contact them. MGF confirmed that the parents had come to his home around April 25, 2021, and took the children without his consent and before the guardianship could be finalized. MGF further indicated that the parents had a gambling problem and hang out around Pechanga Casino and that the children had not attended their enrolled school since the parents left with them.

On April 28, 2021, the social worker made contact with Mother via text message. Mother refused to meet with the social worker or bring the children to CFS's office. She also refused to provide her current address or the children's whereabouts. Due safety concerns for the children's well-being, on May 3, 2021, CFS filed petitions on behalf of the children pursuant to section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (c) (serious emotional damage), and (g) (no provisions for support). Specifically, A.W.'s petition alleged that under section 300, subdivisions (a) and (b), the parents used excessive physical discipline resulting in marks and bruises to the child, placing the child at risk of physical harm. As to both children, CFS alleged that under section 300, subdivision (b), the parents suffered from a substance abuse problem, that they failed to provide the children with adequate supervision and left them alone for extended periods of time, and that they lived an unstable lifestyle and failed to meet the children's needs, all of which placed the children at risk of serious physical harm or

4

illness. As to R.W., CFS alleged under section 300, subdivisions (b) and (c) that the parents failed to provide the child with appropriate mental health services, placing the child at risk of physical harm and serious emotional damage.

The detention hearing was held on May 4, 2021. Mother and Father appeared telephonically. The parents indicated that they would cooperate with having the children taken into custody, as the children were ordered detained by the court, and provided the court with their contact number. The court found a prima facie case to detain the children, issued warrants to take the children into custody, and ordered the parents to submit to an on demand drug test.

By the scheduled jurisdiction/disposition hearing on May 25, 2021, the parents' whereabouts were still unknown and CFS had been unable to locate the children. The social worker contacted law enforcement to assist in locating the children and made a missing person report for both children. When the social worker attempted to contact the parents at the contact number they provided to the court, the parents failed to answer the phone and the social worker left a message for them. The parents also failed to drug test as ordered. CFS thus requested a continuance of the jurisdictional/ dispositional hearing.

The jurisdictional/dispositional hearing was continued to July 15, 2021 to allow CFS to locate the children. On July 15, 2021, the court held a further hearing at which neither parent was present. CFS's counsel informed the court that the family had been located at Pechanga Casino, but the children were unable to be taken into protective custody as law enforcement was unable to enter onto tribal land to take custody of them.

The matter was thereafter continued to September 1, 2021 for a further jurisdictional/dispositional hearing.

In an additional information to the court report, CFS indicated that the children were believed to be on tribal land and that ongoing efforts were being made to take the children into custody.

At the September 1, 2021 further jurisdictional/dispositional hearing, the court continued the matter to March 1, 2022 for the children to be taken into custody.

The children were taken into custody on January 19, 2022. In its addendum report, CFS recommended that the petitions be found true, the children be removed from parental custody and reunification services provided to the parents. When the children were interviewed again following their custody, they denied any concerns in the home and appeared to be protective of the parents. They indicated that their parents left them alone for two to three hours at a time, but denied the parents left them alone overnight. R.W. denied seeing the parents use any substances and appeared to be guarded as he spoke about his parents. He noted his father worked full-time, his mother always looked after him and his sister, and that he took online classes through Khan Academy. He explained that he did not attend a regular school due to his parents being concerned about CFS taking him away. R.W. acknowledged grabbing a knife and threatening to hurt himself but claimed to not engage in any self-harm. A.W. indicated that she struggled with anxiety and panic attacks for a while. She noted that she was attending the Khan Academy so they would not be taken away. She volunteered that she had lied when

initially questioned by social workers and appeared to be apprehensive about talking about her parents. The social worker expressed concerns that the children had been coached by the parents to deny any concerns.

Mother and Father were interviewed. Mother denied current substance use, noting she had not used methamphetamines, marijuana and alcohol since December 31, 2021. She submitted to a random drug test on January 24, 2022 with negative results. She indicated that she had been diagnosed with bipolar disorder and depression and had previously taken medication, but had not had any problems or taken medications since 2013. She denied leaving the children alone for extended periods or using any physical abuse on the children. Mother admitted she had been aware of R.W.'s threat of suicide but did not believe he would actually do anything, and did not seek any follow-up services for him. Father also denied any concerns leading to the dependency. On February 2, 2022, he submitted to a random drug test and tested positive for amphetamines. Mother thereafter contacted the social worker to indicate that she believed Father's positive test was in error and she did not believe he was using substances.

Mediation attempts with the parents failed as they denied every allegation in the petitions and contested the removal of the children from their care.

By March 21, 2022, the children had been placed with a maternal uncle and were doing well. The children did not wish to speak about the case and continued to be very

7

guarded and protective of the parents. The parents were cooperative and had engaged in pre-dispositional services and tested negative for substances since the last hearing.

By July 19, 2022, Mother continued to consistently test negative for substances and had completed her individual counseling. Her counselor believed Mother had made "good progress" and indicated she no longer needed counseling. Mother informed her counselor that she and Father were no longer together. CFS confirmed that Father was no longer in the home and that Mother had asked him to leave. Mother lived with her elderly and bedridden grandfather who she was carrying for. CFS was in the process of assessing Mother's home to begin extended visitation and eventually maintain the children in her care. CFS, however, remained concerned that Mother continued to deny any abuse or neglect to the children. Father failed to drug test and was uncooperative with CFS.

At a hearing on July 19, 2022, the children's counsel informed the juvenile court that he maintained concerns about the level of coaching that went into the children's latest reports regarding their treatment in Mother's care. Counsel also expressed concerns that Mother appeared to solely blame the children for CFS's involvement. The court also received a letter written by the children from which the court immediately noted concerns regarding Mother's coaching of the children during unsupervised visitation. In the letters, both children indicated that all of the allegations were false. The court, based on the concerning information obtained from the letters, ordered that

Mother's visitation be supervised to determine if the letters were written as a result of the Mother's influence on the children.

By August 2022, the children continued to deny any concerns in Mother's care and desired to return to her home. CFS recommended that the children remain with Mother under family maintenance.

At the further contested jurisdictional/dispositional hearing held on August 23, 2022, Mother objected to allegations being found true regarding her conduct and submitted to family maintenance. The court dismissed the section 300, subdivisions (a) (serious physical harm) and (g) (no provision for support) allegations, and found true the subdivisions (b) (failure to protect) and (c) (serious emotional damage) allegations true. The court thereafter declared the children dependents of the court and maintained them in Mother's care with family maintenance services. The court removed the children from Father's care and provided him with reunification services. Mother timely appealed.

III.

DISCUSSION

Mother contends insufficient evidence supports the jurisdictional findings against her pursuant to section 300, subdivisions (b) and (c). She therefore believes the jurisdictional findings against her should be reversed. Mother does not challenge the allegations against Father.

CFS argues Mother's jurisdictional arguments are not justiciable and thus the appeal should be dismissed as moot. CFS contends the jurisdictional determinations

9

found as to Father are sufficient to support jurisdiction over the children. (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 308 ["'[A] jurisdictional finding good against one parent is good against both.'"]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 ["an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence"].) Alternatively, CFS contends there was substantial evidence to support the jurisdictional findings.

A. *Justiciability*

"As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) This is because any decision as to the other findings will not reverse the order of jurisdiction. (*In re Briana V.*, *supra*, 236 Cal.App.4th at p. 308.)

Recently, our Supreme Court in *In re D.P.* (2023) 14 Cal.5th 266 (*D.P.*) explained "[a] case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of [appellant], to grant him [or her] any effect[ive] relief."' [Citation.] For relief to be 'effective,' two requirements must be met. First, the [appellant] must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the [appellant] seeks." (*Id.* at p. 276.) This rule applies in the dependency context. (*In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["the critical factor in considering whether a dependency appeal is moot is whether the

10

appellate court can provide any effective relief if it finds reversible error"]; *In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1490-1491 [courts generally do not act upon or decide moot questions or abstract propositions, nor do they issue advisory opinions; an important requirement for justiciability is the availability of effective relief].)

Relief is effective when it "can have a practical, tangible impact on the parties' conduct or legal status." (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1490.) For example, a case is not moot where a jurisdictional finding affects parental custody rights (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1431-1432), curtails a parent's contact with his or her child (*In re A.R.* (2009) 170 Cal.App.4th 733, 740), or "has resulted in [dispositional] orders which continue to adversely affect" a parent (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548). Purely speculative concerns about the finding's possible effects in hypothetical future proceedings or other contexts and stigma resulting from the challenged jurisdictional finding are all insufficient to make such a showing and avoid mootness. (*D.P.*, *supra*, 14 Cal.5th at pp. 276-278.) Nonetheless, "[an appellate] court has discretion to decide the merits" of a moot appeal, and speculative concerns about possible future effects of a jurisdictional finding may provide a basis for an appellate court to exercise that discretion. (*Id.* at p. 283.) "A reviewing court must "'decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding."' [Citation.]" (*Id.* at p. 276.)

11

Mother urges us to exercise our discretion to consider the merits of her appeal because the findings are prejudicial to her and she "now carries the lifelong stigma [of] being adjudicated a neglectful parent." She further asserts the findings could subject her to inclusion in the Department of Justice's Child Abuse Central Index (CACI) list, which will affect her ability to seek future employment or housing and affect her in child custody proceedings. For the reason explained below, we conclude that Mother has not shown this court can grant her effective relief, and that exercising our discretion to review her moot appeal is not warranted.

Mother's argument about the potential effects of the jurisdictional finding involving the CACI are based on compound speculation and not supported by the record on appeal. CFS is obligated to report Mother to the Department of Justice (DOJ) for inclusion in the CACI if CFS determines that allegations of conduct meeting the definition of "child abuse or severe neglect" in the Child Abuse Neglect and Reporting Act (Pen. Code, §§ 11164-11174.3) (the CANRA) are "substantiated." (Pen. Code, §§ 11169, subd. (a), 11170, subd. (a)(1).) If a jurisdictional finding based on those allegations is affirmed, Mother would lose her right to challenge her inclusion on the CACI (were it to occur). (Pen. Code, § 11169, subds. (d), (e).) The CACI is made available to government agencies, including social services departments and departments that provide licenses for employment related to childcare and school districts. (Pen. Code, § 11170, subds. (b)(3), (b)(4).) When an agency forwards a substantiated report,

12

the agency must provide written notice to the person whose conduct was reported to the CACI. (Pen. Code, § 11169, subd. (c).)

But Mother does not claim that she has been included in the CACI as a result of the conduct described in the challenged jurisdictional allegations. Nor can she claim so. The juvenile court dismissed the serious physical abuse (§ 300, subd. (a)) allegations against both parents at the jurisdictional hearing. "As noted, stigma alone is not enough to avoid mootness, so the question is whether [Mother]'s concern about inclusion in the CACI amounts to a tangible legal or practical consequence of the jurisdictional finding that would be remedied by a favorable decision on appeal." (*D.P.*, *supra*, 14 Cal.5th at p. 278.) We find it does not and therefore her appeal is moot.

Mother has not shown that the general neglect and emotional abuse allegations against her were reported for inclusion in the CACI, nor has she shown that these type of allegations are reportable. These layers of uncertainty render Mother's CACI claim too speculative to survive a mootness challenge. Mother does not assert that she has actually been reported for inclusion in the CACI. When the department forwards a substantiated report, it must provide written notice to the person whose conduct was reported to the CACI. (Pen. Code, § 11169, subd. (c).) Mother does not claim she has received any such notice. Moreover, as previously noted the physical abuse allegations against Mother were dismissed and the children were returned to her care on family maintenance.

Purely speculative concerns about possible inclusion in the CACI when the record does not suggest this has already occurred are insufficient to require review of Mother's

13

appeal. (See *D.P.*, *supra*, 14 Cal.5th at pp. 276-282.) Mother's concerns about the unspecified effect of the challenged jurisdictional findings in hypothetical future dependency proceedings are likewise speculative and insufficient to require review on the merits. (*Ibid.*)

In sum, Mother has not shown that she was included in the CACI or that she will be reported in the future based on the allegations at issue here. We thus find Mother's CACI claim too speculative to demonstrate a specific legal consequence that a favorable judgment could redress. Mother's claim regarding possible prejudice to her in later family law proceedings is also too speculative. We conclude Mother's challenge to the juvenile court's jurisdictional finding is moot.

We must therefore decide whether to exercise our discretion to nevertheless decide Mother's appeal, despite its being moot, based on the potential effects she identifies. (*D.P.*, *supra*, 14 Cal.5th at p. 282.) The California Supreme Court recently laid out a nonexhaustive list of factors for assessing "whether a court should exercise discretionary review of a moot appeal." (*Id.* at p. 286.) Specifically, the court noted that courts may consider (1) "whether the challenged jurisdictional finding "'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or ' "could have other consequences for [the appellant], beyond jurisdiction"'"; (2) "whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct"; and (3) "why the appeal became moot." (*Id.* at pp. 285-286.)

14

After considering these factors, we decline to exercise our discretion to consider the merits of Mother's appeal. As to the first factor, the possible future consequences Mother identifies in connection with the CACI and future family law proceedings are highly speculative. Nothing in the record suggests that Mother has been or will be included in the CACI, and Mother does not argue that the conduct underlying the challenged allegations would be reportable under the CANRA. As to the potential for consequences in possible future dependency proceedings, there is no indication of a possible future dependency proceeding. Moreover, the children were returned to her care. As to the second factor, there is nothing in the allegations to suggest they are so stigmatizing as to weigh heavily in favor of review. Finally, we consider whether the reason the appeal has been rendered moot weighs in favor or against discretionary review. Denying review here would not create any of the improper incentives that concerned the Supreme Court in discussing this factor in *D.P.* (See *D.P.*, *supra*, 14 Cal.5th at pp. 285-286.) On balance, after considering these factors and the totality of the evidence in the record, we conclude that discretionary review of Mother's moot appeal is not warranted.

B. *Jurisdiction Against Mother*

Even if we exercised our discretion to review Mother's claims on appeal, we find substantial evidence to support jurisdiction against Mother.

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re Jonathan B.* (2015) 235 Cal.App.4th 115, 119.) We will affirm if there is reasonable,

credible evidence of solid value to support the court's findings. (*Ibid.*) "'"In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Under this standard, our review "'begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact.'" (*In re David H.* (2008) 165 Cal.App.4th 1626, 1633; accord, *In re R.T.* (2017) 3 Cal.5th 622, 633.)

"We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.] The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "[I]nconsistencies and conflicts in the evidence go to credibility of witnesses and weight of the evidence, which are matters for the trial court." (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1149.)

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the

16

juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

Section 300, in pertinent part, provides that a child may be declared a dependent under subdivision (b) if the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left. (§ 300, subd. (b).)

A juvenile court's exercise of dependency jurisdiction under section 300 is proper when a child is "'of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] physical health and safety.'" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.) "'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) "'The purpose of dependency proceedings is to prevent risk, not ignore it.'" (*Jonathan L. v. Superior Court* (2008) 165

Cal.App.4th 1074, 1104.) "[S]ection 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing." (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383, superseded by statute on another ground as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322.) "Evidence of past conduct may be probative of current conditions. [Citation.] To establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]' [Citation.]" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.)

Here, the failure to protect allegations under section 300, subdivision (b) against Mother were based on her failure to provide adequate supervision to the children by leaving them alone for extended periods of time, her unstable lifestyle, her substance abuse issues, her use of excessive physical discipline on A.W., and her failure to provide R.W. with appropriate mental health services. The record is clear that Mother failed to provide adequate supervision to the children and that it was a significant issue resulting in CFS's involvement. Both children reported that Mother often left them unattended overnight in various hotels and that they would not see their parents for weeks at a time. At the time of the initial investigation, both children reported not having seen their parents for a month. In addition, a year prior to the initial investigation, Mother had left the children with no provisions in the home of the maternal grandmother, who was later arrested for manslaughter and found to be under the influence of methamphetamine.

These same reasons support the allegation related to Mother's unstable lifestyle and failing to provide for the children's needs.

As to substance abuse, the record indicates that Mother had a long history using substances beginning with ecstasy at age 16. She began using marijuana in approximately 2002 or 2003 and used nightly until 2020. Although she denied methamphetamine use and indicated that her last use of substances was on December 31, 2021, R.W. reported that both parents would use a "white powder" and "smoke cigars." While Mother ultimately began testing negative for substances, her first drug test was not until approximately one year after CFS sought to intervene. The family first came to the attention of CFS in February 2021 with CFS seeking to detain the children, however the parents evaded CFS and did not turn the children into CFS custody until January 2022. Mother thereafter tested negative a total of 12 times through August 5, 2022. Nonetheless, the court may consider past conduct when determining whether a child presently needs the juvenile court's protection. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135.) A parent's past conduct is a good predictor of future behavior. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169-1170.)

As to Mother's use of excessive physical discipline, A.W. reported that Mother had anger issues and would yell, scream, hit and slap her. A.W. also reported that Father would spank her and leave marks and bruises on her. In addressing this allegation, Mother attempted to minimize any concerns and placed blame on A.W. for being a difficult child. Regarding her failure to provide R.W. with appropriate mental health

19

services, Mother herself indicated that she did not believe R.W. would actually do anything or carryout his suicidal threats. She also stated that that she did not seek services for R.W. as she was concerned the children would be removed from her care.

Although Mother had engaged in services after she made contact with CFS in January 2022, she continued to deny any wrongdoing or accept any responsibility for her failure to adequately supervise and provide for the children. Mother instead coached the children to mirror her explanations for fear that they would never be returned to her care. Mother regularly failed to provide for the children's ongoing safety and well-being and the children were at a substantial risk of suffering harm. Mother's actions of evading CFS contact for approximately a year also demonstrates her failure to protect the children. Mother's arguments to the contrary relate to credibility issues to which we do not reweigh. We do not "reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.) As previously noted, "inconsistencies and conflicts in the evidence go to credibility of witnesses and weight of the evidence, which are matters for the trial court." (*In re S.A.*, *supra*, 182 Cal.App.4th at p. 1149.)

When viewing the facts in cumulative, it is clear that the children were sufficiently described under section 300, subdivision (b). "Facts supporting allegations that a child is one described by section 300 are cumulative." (*In re Hadley B*. (2007) 148 Cal.App.4th 1041, 1050.) Thus, the court "must consider all the circumstances affecting the child, wherever they occur." (*Id*. at pp. 1048-1049.) In this case, the cumulative evidence

supports the jurisdictional findings against Mother under section 300, subdivision (b). Because we find that the court did not err in sustaining the allegations under subdivision (b) of section 300, we need not address Mother's remaining argument. (*In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 451.)

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.